(March 8, 1917.)

## W. W. HUFFAKER, Appellant, v. GEORGE W. EDGING-TON, Respondent.

[163 Pac. 793.]

CONTESTED ELECTIONS—CONFLICT IN EVIDENCE—BURDEN OF PROOF—DUTIES OF ELECTION OFFICERS.

1. The findings of fact of the district court in contested election cases will not be set aside by the supreme court where there is a substantial conflict in the evidence and such findings are supported by competent evidence.

2. The burden rests upon the party contesting an election to show that enough illegal votes were cast, or legal votes rejected, to change the result of the election, or that such serious wrong or fraud existed as to make the result of the election doubtful, in order to justify the court in setting aside the certificate of the canvassing board.

3. Laws prescribing the duties of the election officers are directed primarily to such officers, and their failure to comply with such laws relative to registering voters who comply with the law so far as required of them should not be construed so as to defeat the right of citizens to vote, unless the failure to strictly comply with such laws makes the result of the election doubtful.

[As to statutory remedy for contest of election as being exclusive, see notes in Ann. Cas. 1913E, 982; Ann. Cas. 1914D, 274.]

APPEAL from the District Court of the Ninth Judicial District, for Bonneville County. Hon. James G. Gwinn, Judge.

Action to contest election of mayor of Idaho Falls. Judgment for contestee. *Affirmed.*

William P. Hanson, for Appellant.

A succession of unexplained irregularities and a disregard on the part of the officials is sufficient to deprive the ballot-box and the return to the credit to which they are entitled, and shifts the burden upon the party maintaining the legality of the official count. (McCrary on Elections, secs. 497, 582.)

Where fraud and irregularities occur in the conduct of election to such an extent that it is impossible for the court to separate, with reasonable certainty, the legal from the illegal votes, the precinct should be excluded. (*Vigil v. Garcia,* 36 Colo. 430, 87 Pac. 543; *Tebbe v. Smith,* 108 Cal. 101, 49 Am. St. 68, 41 Pac. 454, 29 L. R. A. 673.)

Some responsibility is placed upon the voter. (*Sweeney v. Hjul,* 23 Nev. 409, 48 Pac. 1036, 49 Pac. 169.)

Where registration is required by law and election held without the voters being registered, as required by law, the election is invalid, and a person who is not registered as is required by law is not a qualified voter, and not entitled to vote. (*In re McDonough,* 105 Pa. St. 488; *In re Election of School Directors,* 18 Phila. (Pa.) 458; *State v. Hilmantel,* 21 Wis. 566; *Zeiler v. Chapman,* 54 Mo. 502; *Patterson v. Hanley,* 136 Cal. 265, 68 Pac. 821, 975.)

A number of the statutory provisions are held to be directory only, and not mandatory. However, if they affect the merits of the election, they will be held to be mandatory. (*Harrison v. Stroud,* 129 Ky. 193, 16 Ann. Cas. 1050, 110 S. W. 828; *Parvin v. Wimberg,* 130 Ind. 561, 30 Am. St. 254, 30 N. E. 790, 15 L. R. A. 775; *Bowers v. Smith,* 111 Mo. 45, 33 Am. St. 491, 20 S. W. 101, 16 L. R. A. 754; *State v. Board of Canvassers,* 78 S. C. 461, 13 Ann. Cas. 1133, 59 S. E. 145, 14 L. R. A., N. S., 850; note to 83 Am. Dec. 49.)

"Mere irregularities or mistakes on the part of the election officers, if they do not affect the results of the election, will be disregarded, but where the mistakes or irregularities on the part of the judges are so flagrant that the results are doubtful, they cannot be disregarded." (*Peabody v. Burch,* 75 Kan. 543, 12 Ann. Cas. 719, 89 Pac. 1016; *People v. Bates,* 11 Mich. 362, 83 Am. Dec. 745; *Heyfron v. Mahoney,* 9 Mont. 497, 18 Am. St. 757, 24 Pac. 93; *Stackpole v. Hallahan,* 16 Mont. 40, 40 Pac. 80, 28 L. R. A. 502; *Blackwell v. Newkirk,* 31 Okl. 304, Ann. Cas. 1913E, 441, 121 Pac. 260; *Tuntland v. Noble,* 30 S. D. 145, Ann. Cas. 1915A, 1004, 138 N. W. 291.)

"In an election contest where irregularities are shown, the person claiming that legal votes were cast for him has the

burden of proving this fact." (*Lloyd v. Sullivan*, 9 Mont. 577, 24 Pac. 218; Payne on Elections, sec. 592; *Heyfron v. Mahoney*, 9 Mont. 497, 18 Am. St. 757, 24 Pac. 93; McCrary on Elections, secs. 596, 539.)

"Persons attempting to uphold irregularities on the part of those conducting an election have the burden of proof that such conduct did not affect the results." (*People v. Larkspur*, 16 Cal. App. 169, 116 Pac. 702, 706; *Town of Ryan v. Town of Waurika*, 29 Okl. 655, 119 Pac. 220.)

"Where such a number of persons voted in violation of law that the results are placed in doubt, the court should annul the election." (*Harrison v. Stroud*, 129 Ky. 193, 16 Ann. Cas. 1050, 110 S. W. 828.)

Any action of a canvassing board adjourned without date is a nullity. Their power and duties as a canvassing board ceased after they had canvassed the vote and published the returns. (15 Cyc. 383, and cases cited; *Rosenthal v. State Board of Canvassers*, 50 Kan. 129, 32 Pac. 129, 19 L. R. A. 157.)

Where there is a conflict between the certificate returned by the election officers and the tally-sheet, the election certificate controls. (*People v. Tool*, 35 Colo. 225, 117 Am. St. 198, 87 Pac. 224, 229, 231, 6 L. R. A., N. S., 822; *State v. McFadden*, 46 Neb. 668, 65 N. W. 800; *State v. Eastman*, 46 Neb. 675, 65 N. W. 805.)

Phil. Averitt, B. J. Briggs and Herbert Reeves, for Respondent.

Neither the ignorance, neglect, fraud or corruption of an election officer will be allowed of itself to disfranchise the citizen, and neither will failure to observe the provisions of a directory statute be permitted to avoid the election, unless coupled with actual fraud, except where it prevents casting of legal votes, and if the fraud should consist in the reception of illegal votes, it will not then be permitted, no matter what its degree, to avoid the election, if it is possible for the court to purge the polls of the illegal votes cast. (*Vigil v. Garcia*, 36 Colo. 430, 87 Pac. 543; *Lehman v. Pettingell*, 39 Colo. 258,

89 Pac. 48; *Packwood v. Brownell,* 121 Cal. 478, 53 Pac. 1079; *People v. Earl,* 42 Colo. 238, 94 Pac. 294; *Stinson v. Sweeney,* 17 Nev. 309, 30 Pac. 997.)

The wrong of the officers cannot be visited upon the electors, so as to deprive them of the right of suffrage, where the electors themselves have not been parties to the wrong. (*McCrane v. County of Nez Perce,* 18 Ida. 714, Ann. Cas. 1912A, 165, 112 Pac. 312, 32 L. R. A., N. S., 730.)

No irregular or improper conduct in the proceedings of the judges is such malconduct as avoids an election, unless it is such as to procure the person whose right to the office is contested to be declared elected, when he had not received the highest number of legal votes. (*State ex rel. McMillan v. Sadler,* 25 Nev. 131, 83 Am. St. 573, 58 Pac. 284, 59 Pac. 546, 63 Pac. 128; *Heyfron v. Mahoney,* 9 Mont. 497, 18 Am. St. 757, 24 Pac. 93; *Wells v. Taylor,* 5 Mont. 202, 3 Pac. 255; *State v. Fawcett,* 17 Wash. 188, 49 Pac. 346; *Russell v. McDowell,* 83 Cal. 70, 23 Pac. 183; *People v. Earl,* 42 Colo. 238, 94 Pac. 294; *Lane v. Bailey,* 29 Mont. 548, 75 Pac. 191; *Quinn v. Lattimore,* 120 N. C. 426, 58 Am. St. 797, 26 S. E. 638; *People v. Wood,* 148 N. Y. 142, 42 N. E. 536; *Moyer v. Van De Vanter,* 12 Wash. 377, 50 Am. St. 900, 41 Pac. 60, 29 L. R. A. 670; *Bowers v. Smith,* 111 Mo. 45, 33 Am. St. 491, 20 S. W. 101, 16 L. R. A. 754.)

The burden of proof is upon contestor to sustain by a preponderance of the evidence the material averments of his petition. (*Savard v. Herbert,* 1 Colo. App. 445, 29 Pac. 461; *Tarbox v. Sughrue,* 36 Kan. 225, 12 Pac. 935; McCrary on Elections, sec. 466a.)

DAVIS, District Judge.—This is an action to test the legality of the election of the mayor of Idaho Falls.

The contestant, appellant in this court, assigns numerous errors of the district court, which may be grouped under four general heads, as follows:

That the court erred in not finding that there were more illegal votes cast.

In not imposing the burden upon the party claiming the benefit of the votes as cast to show the legality thereof, after it was shown that there was irregularities in the registration of voters and in the conduct of the election officers.

In finding that wherein the election officers failed to fully perform their duties nothing was done or omitted with any sinister purpose or fraudulent intent.

And in holding that the irregularities and misconduct on the part of the officers of election in the first ward did not amount to actual fraud so as to affect the returns from that precinct.

The district court found that there were 909 votes cast for Edgington and 900 for Clark, and after deducting seven illegal votes cast for Edgington, he received 902 votes, and after deducting four illegal votes cast for Clark, he received 896 votes, thus giving the election to Edgington by a majority of six votes.

It is admitted that David Clark, who voted for Edgington, was not a legal voter, and that there were two more illegal votes cast, but for whom could not be determined.

The contestant contends that five other persons who voted for Edgington were also illegal voters, the principal objection to each being that he was not a resident and citizen of Idaho Falls as required by law. There was substantial evidence in each instance to the effect that such person was a citizen entitled to vote in Idaho Falls, and this court will not disturb the findings of the district court to that effect.

In addition to the instances mentioned, the contestant alleges that a large number of other persons were permitted to vote who were not registered as required by law, and urges that therefore the vote of the precinct wherein they voted should be rejected.

There is nothing in the evidence to show that such persons were not citizens qualified to register and vote. They applied to the election officers for leave to register and vote upon election day, signed the elector's oath as requested, and did everything the election officers required of them. There is evidence to the effect that such persons were vouched for by

freeholders orally, answered questions giving the necessary information for filling in the blanks in the oaths, to establish that they were qualified to be registered to vote, and that such blanks were not filled in on election day because voters came too fast to afford time therefor, and that the election officers planned to fill in the blanks later.

The district court found that the acts of the officers in receiving the votes of those who attempted to register and vote on the day of election were done in good faith and without any intentional wrong upon their part or upon the part of the voters, and that such persons were legal voters and were rightfully permitted to vote, although there were some irregularities in the method of registering the voters and in the conduct of the election officers.

The irregularities complained of consisted in a failure upon the part of the election officers to furnish sufficient supplies so that the freeholders' oaths vouching for the qualifications of the voters registered on election day might be made out; that the voters in some instances did not bring freeholders to the polls to vouch for them; neglect of the officers registering voters at the polls on election day to fill out all blanks in the electors' oaths; and a failure of the registering officer to sign the jurat or formally administer the electors' oaths to the voters.

It is contended by the contestant that the burden rests upon the party claiming the benefit of the votes challenged by a contest to show that such persons were legal voters, after it is made to appear that there were irregularities in the method of registering such persons.

Any irregularities which tend to show such fraud on the part of voters or election officers that raises a doubt as to the result of the election may place the burden upon the party claiming the benefit of such votes to show that those who voted were in fact legal voters, but in the first instance the burden is upon the party contesting an election to make a *prima facie* showing to the effect that sufficient illegal votes were cast, or legal votes rejected, to change the result of the election, or that such serious wrong or fraud existed as to

make the result of the election doubtful.   (*Tarbox v. Sugh-rue*, 36 Kan. 225, 12 Pac. 935.)

While it is apparent that there were irregularities in the conduct of the election in Idaho Falls, they do not seem to make the result of the election doubtful, nor is this court convinced that there was intentional wrongdoing or fraud such as to vitiate the election.   There is no contention that any legal votes were rejected, and the evidence does not prove that there were sufficient illegal votes received to change the result declared by the canvassing board.

The contestant urges that the irregularities as to register-ing voters, the failure of the election officers to furnish enough supplies and to properly certify the results of the election, the carelessness of the election officers in leaving the ballot-box in a passageway in the city hall and the uncertainty as to what was done with the keys, justify the throwing out of the votes of ward No. 1.   While the vote of a precinct may be rejected in certain instances, it is a drastic measure used only in emergencies, and should not be resorted to whenever it is possible to purge the election of irregularities without depriv-ing citizens of their vote.   Such action has the effect of pun-ishing and invalidating the votes of loyal citizens in order to prevent the fraud and wrongdoing of dishonest persons seek-ing to vote illegally, and while in some instances it is justified, in this case the irregularities complained of were not such as to warrant the court in rejecting the vote of the precinct re-ferred to.   It is apparent that the polls could have been purged of the illegal votes, and that the other irregularities complained of did not cast serious doubts upon the results of the election.

The contestant contends that the irregularities and dis-regard of the law upon the part of the election officers amounts to the same thing as actual fraud, in effect, and he insists that all the votes cast under such circumstances are illegal votes.   He cites sec. 2 of art. 6 of the constitution and claims that since it is necessary for a voter to be "regis-tered as provided by law," it invalidates the votes where there are irregularities in the registering of voters.   This raises the

question as to what is required as a substantial compliance with the registration laws to entitle citizens to vote. It has been held frequently that a strict, literal compliance with the provisions of the law as to registration will not be required in the absence of fraud or intentional wrongdoing. If a person is a citizen, has the other qualifications of a voter and does everything required of him to register and vote, the failure of the election officers to do their part in every detail will not deprive the citizen of the right to vote. Voters are not chargeable with constructive notice of the failure of registration officers to fill in the blanks in the forms for oaths after all questions are answered and the necessary information given so that such blanks may be filled in by the officers. It is inevitable that mistakes shall occur in elections because of the inexperience of election officers, and sometimes the law cannot be strictly complied with, but where the will of the citizen legally entitled to vote is apparently correctly expressed, such mistakes or oversights as do not result in making the election uncertain will not be allowed to defeat the choice of the electors. Many of the provisions of law are directed to the officers of election, and the citizens applying to vote will not be required to see that the election officers do their full and exact duty with respect to such matters. Statutes prescribing the manner, form and time within which public officers shall discharge public functions are regarded as directory, unless there is something in the statutes which shows a different intent. Hence, as a general rule, statutes prescribing the duties of election officers relative to registering voters should not be so construed as to make the right of citizens to vote depend upon a strict observation of the law by such officers. (McGrane v. Nez Perce County, 18 Ida. 714, Ann. Cas. 1912A, 165, 112 Pac. 312, 32 L. R. A., N. S., 730; Vigil v. Garcia, 36 Colo. 430, 87 Pac. 543; Lehman v. Pettingell, 39 Colo. 258, 89 Pac. 48; Packwood v. Brownell, 121 Cal. 478, 53 Pac. 1079; People v. Earl, 42 Colo. 238, 94 Pac. 294; Lane v. Bailey, 29 Mont. 548, 75 Pac. 191; Quinn v. Lattimore, 120 N. C. 426, 58 Am. St. 797, 26 S. E. 638; People v. Wood, 148 N. Y. 142, 42 N. E.

536; *Stackpole v. Hallahan,* 16 Mont. 40, 40 Pac. 80, 28 L. R. A. 502; *Earl v. Lewis,* 28 Utah, 116, 77 Pac. 235.)

Even though the constitution and laws may require that citizens shall be registered as a prerequisite to the right to vote, there is a vast difference between irregular registration and no registration at all. An attempt to register which may not fully comply with the specific requirements of the statutes may nevertheless satisfy the constitutional provision, and thus entitle the citizen to vote. (*People v. Earl, supra; Stinson v. Sweeney,* 17 Nev. 309, 30 Pac. 997.)

Where irregularities deprive qualified electors of their constitutional right to express their judgment at the election, or permit persons not entitled to vote to participate in the election and directly affect the result of the election, the drastic remedy of rejecting the vote of the entire precinct may be adopted, but not otherwise.

*McGrane v. Nez Perce County, supra,* states: "The prohibition contained in sec. 408, Rev. Codes, against election officers furnishing the electors with ballots containing distinguishing marks, is directed against the officers charged with the preparation and furnishing of the ballots, and directs and commands the officers as to the manner and method of discharging their public duties, but the statute nowhere prescribes that the penalty for violating this duty, or a failure to faithfully discharge it, shall be visited upon the electors or avoid the election." Likewise it is the duty of election officers to furnish necessary blank forms at an election so that a freeholder may vouch in writing for a citizen registering at the polls on election day, and the registering officer should formally administer the oath to a citizen who signs an elector's oath, and should fill in all blanks according to the information given by the citizen, but a failure on the part of such officer to do the things required of him should not avoid the election, so long as the result is not thereby made doubtful.

· "We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake, or even the wilful misconduct, of election officers in performing the duty cast upon them." (*People v. Wood, supra.*)

"It is a rule, well grounded in justice and reason, and well established by authority and precedent, that the voter shall not be deprived of his rights as an elector, either by the fraud or mistake of the election officer, if it is possible to prevent it." (McCrary on Elections, 3d ed., sec. 196.)

The act of the canvassing board in accepting the computation from the tally-sheet as to the number of votes cast for the candidates, instead of the certificate of the election officers, which was shown on the face of the returns to be incorrect was a justifiable exercise of authority under the circumstances. The record seems to have clearly shown a clerical error in computation, and it is the duty of such board to adopt the showing necessary to make the result of the canvass speak the truth, if it is apparent from the face of the returns, for the intention of the voters should govern, if clearly ascertainable, and the votes should be canvassed and counted for the persons entitled thereto.

The judgment appealed from is affirmed. Costs are awarded to respondent.

Morgan and Rice, JJ., concur.