791 P.2d 1313

**Robert PROUSE and Erwin Prouse, Plaintiffs–Counterdefendants–Respondents–Cross–Appellants,**

v.

**Max S. RANSOM and Rodney S. Ransom, dba Ransom Angus Ranch, Defendants–Third Party Plaintiffs–Counterclaimants Appellants–Cross–Respondents,**

v.

**Gordon PROUSE, Third–Party Defendant Respondent–Cross–Appellant.**

No. 17055.

Court of Appeals of Idaho.

July 5, 1989.

Petition for Review Denied
May 23, 1990.

---

David A. Johnson, Idaho Falls, for appellant.

Robert M. Kerr, Jr., Blackfoot, for respondent.

BURNETT, Judge.

This litigation arises from a sharecropping agreement and a related agreement for hay hauling. Each side has accused the other of breaching these agreements. Following a jury trial, the district court entered a judgment primarily favoring the sharecrop tenants. On appeal, the farm owners have argued that relevant evidence was improperly excluded at trial, and that the jury was improperly instructed on the meaning of the sharecropping agreement. In a cross-appeal, the tenants have asserted an entitlement to prejudgment interest on the net monetary award they received. They also have disputed the district court's allocation of costs and attorney fees. For reasons explained below, we vacate the judgment and remand the case.

The background facts may be summarized briefly. The farm owners, Max and Rodney Ransom, entered into a sharecropping agreement with the tenants, Robert and Erwin Prouse. The agreement provided that the owners would receive 25% of all barley and 40% of all hay grown on the land. When the farming season began, the tenants were unable to start the irrigation pump because the owners owed approximately $6,500 on a delinquent power bill. The owners paid the bill in early July and water was first applied to the growing crops in early August. The ultimate yield of hay and barley was disappointing. The tenants blamed the outcome on lack of water early in the season. The owners contended that the tenants' substandard farming practices were to blame.

The dispute was broadened when the farm owners, who had been engaged in a separate hay hauling dispute with Gordon Prouse, blocked the tenants' access to bales of harvested hay. The tenants brought a claim and delivery action. The owners counterclaimed for numerous alleged breaches of the sharecropping agreement, and they filed a third-party complaint against Gordon Prouse. The tenants then amended their original complaint to include claims for lost profits, for an alleged overpayment of barley to the owners, and for hay hauling services performed by Gordon Prouse the previous year. Not to be outdone, the owners amended their counterclaim, alleging that the tenants had damaged a sprinkler system on the farm.

A jury found that both parties had breached the sharecropping agreement.

The jurors awarded $27,839 to the tenants, and $7,839 to the owners, on their respective claims. The owners appealed and the tenants cross-appealed, bringing this factually complex case to us.

I

We need not, and will not, fully discuss every issue raised by the parties. For the purpose of appellate review, it is sufficient to identify a dispositive issue requiring the judgment to be vacated, and to comment on the remaining issues only as necessary for guidance on remand. In our view, the dispositive issue is the trial court's exclusion of evidence on the tenants' farming practices.

■ The owners contended at trial that the tenants had breached the lease by failing to follow farmerlike practices—particularly, by failing to apply fertilizer. The owners attempted to present testimony regarding the amount of fertilizer used in the past, as well as the cost of replenishing nutrients in the depleted soil. They also attempted to introduce an exhibit containing fertilizer recommendations made by a county extension agent approximately two years before the lease. Although the owners did not make a full and formal offer of proof, the substance of the evidence was clear in the context of the trial. See I.R.E. 103.

■ The trial judge excluded all such evidence, declaring it to be irrelevant. In reaching his decision, the judge appeared to place great weight on a clause in the agreement reciting that the tenants would determine the amount of fertilizer to be applied to the soil. However, this recital should not have been viewed in isolation. The sharecropping agreement also provided that the tenants would perform in a "farmerlike manner," returning the land to the owners in a condition as good as its original condition. The excluded evidence was offered to show that the tenants had not satisfied this requirement.

Determinations of relevancy are governed by I.R.E. Rule 401:

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The evidence in question, if believed, would have tended to prove that the soil had been depleted, giving rise to an inference that the tenants had failed to perform in a farmerlike manner. Although the county extension agent's recommendation was somewhat dated, we could not deem it so remote in time as to be irrelevant. We conclude that the judge erred in excluding the evidence on lack of farmerlike performance. We further conclude that the excluded evidence reasonably could have affected the amount of damages awarded to the owners by the jury. Consequently, the error was not harmless.

■ We acknowledge that the precise effect of the error is difficult to quantify. The jury's perception of the tenants' performance might well have affected the award to the tenants as well as the smaller award to the owners. It would be presumptuous to freeze one award while setting aside the other and allowing it to be modified on remand. Accordingly, unless the parties stipulate otherwise on remand, the entire judgment must be vacated, as it relates to the sharecropping agreement.

II

We now turn to the remaining issues, commenting on them for guidance on remand. We deal first with issues raised by the owners.

A

The owners have asserted that the sharecropping agreement required the tenants to pay the outstanding power bill in order to start the irrigation pumps. In the alternative, they argue that the agreement is am-

biguous on this point, and that the jury should have been allowed to determine the parties' underlying intent. We disagree with both contentions, as did the district court.

■ Whether a contract is ambiguous and, if not, what the contract means, are questions of law over which we exercise free review. *Clearwater Minerals Corp. v. Presnell,* 111 Idaho 945, 729 P.2d 420 (Ct.App.1986). Here, the agreement required the tenants to make "advancements," if necessary, to the power company. The owners would have us hold that the word "advancements" could be interpreted to mean that the tenants were obliged to pay the existing debt owed by the owners, and to settle with the owners later. However, we deem it clear that an advancement is a payment of money against a future obligation, not a satisfaction of an existing debt. In this agreement, the term advancement denoted a possible security deposit paid to the power company. It did not signify a loan by the tenants to the owners, by payment of the owners' obligation to the power company. We hold that the lease was unambiguous. The tenants were required only to provide a security deposit against their own contemplated power charges, not to pay the owners' outstanding debt.

■ The owners also have suggested that there was an oral contemporaneous agreement for the tenants to pay the delinquent power bill. The tenants have denied it. However, the issue turns not upon conflicting testimony but upon the parol evidence rule. Where, as here, a comprehensive agreement had been negotiated, reduced to writing and signed, evidence of an oral contemporaneous agreement is inadmissible to vary the terms of the written instrument. *E.g., Farnes v. Grover,* 106 Idaho 752, 682 P.2d 1299 (Ct.App.1984). Any oral agreement requiring the tenants to pay the owners' power bill would have varied the agreement as we have construed it, and would have substantially increased the tenants' economic burdens. Accordingly, we hold that any evidence of such an oral agreement should not be admitted on remand.

■ The owners next contend that they were empowered by the agreement to judge the adequacy of the tenants' performance. They rely on language to the effect that the tenants were required to farm the land in a manner "satisfactory" to the owners. Again, we think that provisions of the agreement must be read together rather than in isolation. Although the agreement does indeed speak of farming "satisfactory" to the owners, it also provides that the tenants will raise the largest amount of hay and barley that farmerlike practice will permit. We hold that the contract standard is one of good faith, as measured by an objectively reasonable standard, rather than by a subjective standard known only to, and controlled solely by, the owners. *See Meredith Corp. v. Design & Lithography Center,* 101 Idaho 391, 614 P.2d 414 (1980).

■ With respect to this objective standard, the trial judge instructed the jury as follows:

> One of the terms of the lease provides that the Lessee shall farm the premises in a farmerlike manner and to the satisfaction of the Lessor and to raise the greatest amount of hay and grain thereon which the nature of the soil and season will permit. Farming to the satisfaction of the Lessor and growing the greatest amount of hay and grain are both satisfied if the premises are farmed in a farmerlike manner. To farm in a farmerlike manner simply means farming as good farmers usually do and particularly farming as good farmers usually do here in the upper Snake River Valley....

This instruction was sufficient. It was essentially a shorthand expression of a reasonably objective standard. Although the limiting reference to farmers in a particular geographical area was not supported by evidence of unique conditions or practices

in that area, the reference would not render the instruction reversible *per se* if given again on remand.

### B

We now turn to issues raised in the tenants' cross-appeal. The tenants contend, first, that they are entitled to prejudgment interest on any net award in their favor. We agree in part. The critical inquiry is whether the tenants' gross award consists of liquidated or readily ascertainable damages. *Davis v. Professional Business Services, Inc.*, 109 Idaho 810, 712 P.2d 511 (1985). Should a jury again find in their favor, the tenants would be entitled to prejudgment interest on the portion of the award compensating them for hay detained by the owners. The market value of the hay is readily ascertainable. So, too, is the value of any overpayment of barley made to, and wrongfully retained by, the owners. In contrast, however, the tenants should not receive prejudgment interest on any part of the award representing lost profits due to the diminished harvest. This figure is not liquidated or readily ascertainable.

The tenants next argue that the trial judge erred in apportioning the award of costs and attorney fees, based on the comparative recoveries of the parties. By vacating the judgment we necessarily have vacated the cost and fee allocation. However, we do not quarrel with the judge's methodology. Rule 54(d)(1), I.R.C.P., gives a trial judge discretionary authority to apportion costs if both parties prevail. Rule 54(e)(5) allows attorney fees to be treated in the same manner. Therefore, if both parties again prevail in part, the trial judge may apportion attorney fees and costs in relation to their recoveries or by any other equitable standard.

In summary, we vacate the judgment on the parties' dispute over the sharecropping agreement. The case is remanded for further proceedings consistent with this opinion. We note that the jury found neither party liable for damages arising from transactions outside the scope of the sharecropping agreement. Implicitly, the jury concluded that the owners had no liability to Gordon Prouse on the third-party claim for hay hauling services. Therefore, this claim has been resolved and will not be relitigated on remand. Because no party has dominantly prevailed in this appeal, we award no costs or attorney fees.

WALTERS, C.J., and SWANSTROM, J., concur.