943 P.2d 47

**In the Matter of the Petition for Writ of Mandamus and Alternative Writ of Mandamus to the Industrial Commission and Drew S. Forney, Manager of the State Insurance Fund.**

**Lydia Justice EDWARDS, in her official capacity as Treasurer of the State of Idaho, Petitioner,**

v.

**INDUSTRIAL COMMISSION OF the STATE of Idaho and Drew S. Forney, in his official capacity as Manager of the State Insurance Fund, Respondents.**

No. 23518.

Supreme Court of Idaho, Boise, April 1997 Term.

July 25, 1997.

458

Jim Jones & Associates, Boise, for petitioner. Jim Jones argued.

Alan G. Lance, Attorney General; A. Rene Martin, Deputy Attorney General, Boise, for respondent Industrial Commission of the State of Idaho. A. Rene Martin argued.

Alan G. Lance, Attorney General; Brett T. DeLange, Deputy Attorney General, Boise, for respondent Drew S. Forney. Brett T. DeLange argued.

SILAK, Justice.

The Treasurer of the State of Idaho filed a petition for writ of mandamus requesting the Supreme Court to order the Industrial Commission to require the State Insurance Fund to make a security deposit with the Treasurer pursuant to Idaho Code Section 72–301(2). We hereby grant the petition.

## I.

### FACTS AND PROCEDURAL BACKGROUND

In July 1996, the law firm of Kelso & Irwin, P.A., filed a petition for declaratory ruling with the Industrial Commission (Commission) seeking a determination that I.C. § 72–301 applies to the State Insurance Fund (SIF). I.C. § 72–301(2) provides that the Commission shall require workmen's compensation sureties to deposit with the Treasurer of the State of Idaho an amount equal to the total amounts of all outstanding and unpaid compensation awards against the surety. Kelso & Irwin argued that since the SIF is a surety pursuant to I.C. § 72–102(28)(Supp.1997)[1], the SIF is required to make the above deposit required by I.C. § 72–301(2). The SIF argued that the Idaho Legislature has directed the SIF, pursuant to I.C. § 72–911, to maintain surplus and reserve funds that are sufficiently large to cover the catastrophic hazard and all other unanticipated losses and to meet anticipated losses and carry all claims and policies to maturity. The SIF further argued that pursuant to I.C. § 72–912, the Endowment Fund Investment Board (the Board) is required to invest the surplus and reserve funds belonging to the SIF. The SIF thus claimed that compliance with I.C. § 72–912 provides greater protection to its claimants and insureds than that afforded to other sureties' insureds under I.C. § 72–301, and that therefore, to the extent there is a conflict between I.C. § 72–301 and I.C. § 72–912, the latter controls.

The Commission issued its ruling on the petition on August 20, 1996, declining to provide the relief requested by Kelso & Irwin. The Commission found that Kelso & Irwin

1. I.C. § 72–102(28)(Supp.1997) was formerly co- dified as I.C § 72–102(25).

had failed to establish that an actual or justiciable controversy existed. The Commission based its decision on the finding that Kelso & Irwin failed to show that it would be directly affected by the posting of the security. Kelso & Irwin thereafter filed an appeal with this Court, which has been stayed pending the outcome of this original proceeding.

On October 4, 1996, the petitioner in the present case, State Treasurer Lydia Justice Edwards (Edwards) was advised by the Idaho Attorney General of the pending litigation in *Kelso & Irwin v. State Ins. Fund.* Edwards concluded that the SIF is required to make the security deposit as set forth in I.C. § 72–301(2) and that the SIF had never done so. Edwards then wrote to both the SIF and the Commission requesting that the deposit immediately be made. The SIF, responding through the Attorney General's office, stated that it could not comply with Edwards' request without violating I.C. § 72–912. Edwards renewed her request by letter dated November 20, 1996, stating that the two statutes could be reconciled, but the SIF again declined to make the deposit. The Commission never responded to either letter.

Edwards considered intervening in the *Kelso* appeal, but decided that this course of action would not provide a speedy resolution to these issues. Edwards concluded that since the issue pending in the *Kelso* appeal was whether a justiciable controversy exists between Kelso and the SIF, a ruling in that case may not address the merits. Edwards also believed that the Commission would be reluctant to entertain a new petition brought by her while the *Kelso* appeal is pending. Edwards further believed that even if the Court were to issue a ruling on the merits in the *Kelso* appeal, it was not clear an order would be issued mandating the Commission to require the SIF to place a deposit with Edwards. Thus, on January 7, 1997, Edwards filed this original jurisdiction proceeding against the Commission and Drew S. Forney (Forney), in his official capacity as Manager of the SIF (collectively the Respondents), seeking a writ of mandamus.

As of December 31, 1996, the market value of the SIF's portfolio that the Board holds for the SIF pursuant to I.C. § 72–912, was $386,019,710.08. As of December 31, 1996, the SIF's Incurred Loss Reserve was $131,-205,000 and its surplus was $150,360,192.17. The total amount of all outstanding and unpaid compensation awards against the SIF, as of December 31, 1996, was $25,549,641.88.

## II.

### ISSUES PRESENTED

Edwards states the issues as follows:

1. Whether mandamus is an available remedy for Edwards in this matter.
2. Whether the Commission must require the SIF to make a deposit with the Treasurer under I.C. § 72–301(2) and whether the SIF must make such deposit.

The Commission states the issue as follows:

1. Whether an adequate remedy at law exists by which the Treasurer may address the issues raised by her petition, preventing the Supreme Court's issuance of a writ of mandamus or other alternative writ.

The SIF states the issue as follows:

1. Whether Edwards has statutory authority to bring her petition.

## III.

### ANALYSIS

#### A. A Writ Of Mandamus Is The Appropriate Remedy In This Case.

 Article V, § 9 of the Idaho Constitution and Idaho Code Section 1–203 confer on the Supreme Court original jurisdiction to issue writs of mandamus. Such a writ may be issued "to compel the performance of an act which the law especially enjoins as a duty resulting from an office ..." I.C. § 7–302. This Court has held that mandamus is the proper remedy for one seeking to require a public officer to carry out a clearly mandated ministerial act which is not discretionary. *Cowles Publ'g Co. v. Magistrate Court,* 118 Idaho 753, 760, 800 P.2d 640, 647 (1990). However, the existence of an adequate remedy in the ordinary course of law, either legal

or equitable in nature, will prevent the issuance of a writ of mandamus. *Idaho Falls Redev. Agency v. Countryman,* 118 Idaho 43, 44, 794 P.2d 632, 633 (1990). The party seeking the writ of mandamus has the burden of proving the absence of an adequate, plain, or speedy remedy in the ordinary course of law. *Id.*

■ In the present case, the Respondents argue that the mandamus action is inappropriate here because Edwards had an adequate remedy at law, reasoning that I.C. § 72–301 grants the Commission the authority to enforce that section's provision, and that in instances of an actual controversy, a party with a proper interest may seek a declaratory ruling from the Commission. Specifically, the Respondents rely on Rule XV of the Commission's Judicial Rules of Practice and Procedure which provides that a petitioner may seek a declaratory judgment from the Commission "whenever [a person has] an actual controversy over the construction, validity or applicability of a statute, rule, regulation or order pertaining to any matter within the Idaho Industrial Commission's jurisdiction...." Rule XV(f) provides that the Commission may issue a written ruling which shall have the force and effect of a final order or judgment or decline to make a ruling. The Respondents thus argue that Edwards should have proceeded in this manner, and that if the Commission issued a ruling against her she could have then appealed directly to this Court. This, the Respondents claim, provided Edwards with an adequate remedy at law for addressing the issues in her petition.

The Respondents' argument must fail for two reasons. First, it would have been futile for Edwards to have filed a declaratory judgment action before the Commission. On October 22, 1996, Edwards wrote to the Commission and the SIF requesting the Commission to require the SIF to deposit with her an amount equal to the total amounts of all outstanding and unpaid compensation awards against the SIF pursuant to I.C. § 72–301(2). Brett DeLange of the Attorney General's office responded to Edwards' letter, apparently only on behalf of the SIF, and stated that the SIF could not comply with Edwards' request without violating I.C. § 72–912. Edwards again wrote to the SIF and the Commission enclosing a legal evaluation by attorney Jim Jones, which concluded that the two statutes in question, I.C. § 72–301 and § 72–912, could be reconciled. Brett DeLange responded to Mr. Jones, again solely on behalf of the SIF, stating that the SIF declined to make the requested deposit. The Commission never responded to Edwards and never demanded that the SIF make the deposit with Edwards. Thus, the only reasonable conclusion is that the Commission either did not believe it had the authority to require the SIF to make the deposit or it believed that the SIF was not required to make the deposit. Either way, Edwards had good reason to believe that filing a declaratory judgment action before the Commission would have been futile.

Second, and more importantly, the Commission could not provide a suitable forum in which to impartially interpret the statutes in question since Edwards is asking the Commission to interpret and enforce a statute against itself. I.C. § 72–301(2) provides, in pertinent part:

> To the end that the workmen secured under this act shall be adequately protected, *the commission shall require* such sureties to deposit and maintain with the treasurer of the state money or bonds of the United States or of this state ... in an amount equal to the total amounts of all outstanding and unpaid compensation awards against such surety.

(Emphasis added). Requesting the Commission to issue a declaratory ruling interpreting a statute which requires the Commission itself to take certain action raises serious due process questions. A petition for writ of mandamus was therefore the proper course of action for Edwards to take under the circumstances of this case.

**B. The Commission Must Require The SIF To Deposit With Edwards The Current Total Amount Of All Outstanding And Unpaid Compensation Awards Against The SIF, And The SIF Must Make Such Deposit.**

■ The statutes at issue in this case, which the Respondents claim are in conflict,

are I.C. § 72–301(2) and I.C. § 72–912. As stated above, I.C. § 72–301(2) directs the Commission to require all workmen's compensation sureties in this state to deposit with the treasurer "an amount equal to the total amounts of all outstanding and unpaid compensation awards against such surety." "Surety" is defined under Title 72, Idaho Code, as "any insurer authorized to insure or guarantee payment of worker's compensation liability of employers in any state; *it also includes the state insurance fund,* a self insurer and an inter-insurance exchange." I.C. § 72–102(28). (Emphasis added.) Thus, the SIF is clearly included in "sureties" under I.C. § 72–301(2). The Code further provides that the monies deposited with the Treasurer shall be held in an express trust for the benefit of the employees of the employers whose compensation liability has been determined. I.C. § 72–302.

The SIF contends it is exempt from the responsibility of making such a deposit based upon the provisions of I.C. § 72–912 which provides, in pertinent part:

**Investment of surplus or reserve.**—The endowment fund investment board shall at the direction of the manager invest any of the surplus or reserve funds belonging to the state insurance fund in real estate and the same securities and investments authorized for investments by insurance companies in Idaho as shall be approved by the manager. The endowment fund investment board shall be the custodian of all such securities or evidences of indebtedness, provided that the endowment fund investment board may employ a custodial bank to hold such securities.

The SIF contends that it cannot comply with I.C. § 72–301(2) without violating the provisions of I.C. § 72–912. Pursuant to the rules of statutory construction, the SIF argues, I.C. § 72–912 is the more specific statute and is therefore controlling.

In addition, the SIF argues that it provides greater protection for its insureds and claimants than that which is required of other sureties because these "surplus or reserve funds" include the amount required to be deposited under I.C. § 72–301(2), *i.e.,* the outstanding and unpaid compensation awards

or known losses. With respect to the above "surplus," I.C. § 72–911 provides that 10% of the premiums collected from employers shall be set aside to create a surplus large enough to "cover the catastrophe hazard and all other unanticipated losses." I.C. § 72–911 also provides that the SIF is to maintain a "reserve" adequate enough "to meet anticipated losses and carry all claims and policies to maturity." Thus, the SIF argues that the legislature intended for the Board to be the custodian for all of the SIF's securities acquired to cover all of its losses, and therefore cannot deposit any security with Edwards without violating I.C. § 72–912.

With respect to the rules of statutory construction, this Court has held that when two statutes relate to the same subject, even though they are in apparent conflict, they are to be construed harmoniously if at all possible. In a recent case, the Court held:

[I]t is axiomatic that this Court must assume that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter. In the absence of any express repeal or amendment, the new provision is presumed in accord with the legislative policy embodied in those prior statutes. Therefore, statutes relating to the same subject, although in apparent conflict, are construed to be in harmony if reasonably possible.

*Cox v. Mueller,* 125 Idaho 734, 736, 874 P.2d 545, 547 (1994) (citations omitted). We hold that I.C. § 72–301(2) and § 72–912 can be reconciled harmoniously.

The definitions of "surplus" and reserves", as those terms relate to the SIF, are found in I.C. § 72–911. "Surplus" is a percentage of insurance premiums set aside to cover catastrophes and other *unanticipated* losses. An outstanding and unpaid compensation award cannot qualify as an unanticipated loss since it is a known and quantifiable amount. A "reserve" fund under I.C. § 72–911 is to "meet anticipated losses and carry all claims and policies to maturity." Anticipated loss here means a loss anticipated or expected in the future that is currently not known. This is not the same as an existing, known loss or award for which the deposit is required under I.C. § 72–301(2). Thus, we hold that the

**462**

legislature did not intend for "surplus and reserves", as those terms are defined in Chapter 9, Title 72, Idaho Code, to include amounts for all outstanding and unpaid compensation awards.

I.C. § 72–910 further supports a construction that monies representing all outstanding and unpaid compensation awards should be deposited with the treasurer. That section provides, in pertinent part:

> **State treasurer custodian of fund.**—The state treasurer shall be the custodian of the state insurance fund, and all disbursements therefrom shall be paid by him upon warrants signed by the state controller or upon sight drafts signed by the state insurance manager as provided by section 72–927, Idaho Code.

This section indicates that it is the treasurer who is to make any and all payments. In view of this requirement, we believe that the legislature intended for the treasurer to be the keeper of the monies from which the outstanding and unpaid workers' compensation awards are to be paid. Otherwise, the above-quoted sentence from I.C. § 72–910 would have no meaning.

Another reason that I.C. § 72–301(2) and § 72–912 can be reconciled (i.e., that the outstanding compensation awards are not included in I.C. § 72–912) is related to the provision in I.C. § 72–912 which states that the Board shall, when so directed by the manager of the SIF, invest the surplus and reserve funds in real estate. The investment in such a long-term unliquidated asset like real estate would certainly seem ideal for unanticipated, future forward-looking losses as well as even for catastrophic, anticipated losses since such an investment would likely yield a high rate of return in the long run. However, such an investment would not be appropriate for an existing, known loss such as an outstanding and unpaid compensation award since such an award is presumably to be paid in the near future.

We therefore hold that I.C. § 72–302(2) and § 72–912 can be construed in harmony. I.C. § 72–301(2) does apply to the SIF, and pursuant to that section, the Commission is hereby directed to require the SIF to deposit with Edwards an amount which is currently equal to the amount of all outstanding and unpaid compensation awards which monies will be disbursed by Edwards pursuant to I.C. § 72–910 in due course. We further hold that Forney, as manager of the SIF, may direct the Board to invest the remaining surplus and reserve funds pursuant to I.C. § 72–912.

## IV.

## CONCLUSION

For the reasons stated above, the petition for writ of mandamus is granted and a writ shall forthwith issue.

Costs are awarded to petitioner. No attorney fees awarded to any party.

TROUT, C.J., and JOHNSON, McDEVITT and SCHROEDER, JJ., concur.