983 P.2d 212

**Dave NELSON, Willard Bell and Marx Hintze, Plaintiffs–Appellants– Cross Respondents,**

v.

**BIG LOST RIVER IRRIGATION DISTRICT; Board of Directors, Don Aikele, Marx Hintze, Harry Crawford, Ray Boyack, and Charlie Huggins; and Vivian Ellwein, an individual, Defendants–Respondents–Cross Appellants.**

No. 24093.

Supreme Court of Idaho, Twin Falls, March 1999 Term.

July 22, 1999.

Hepworth, Lezamiz and Hohnhorst, Twin Falls, for appellants. Eileen A. McDevitt argued.

Holden, Kidwell, Hahn and Crapo, Twin Falls, for respondent Big Lost River Irrigation District. Kent W. Foster argued.

Hollifield and Bevan, Twin Falls, for respondent Vivian Ellwein.

KIDWELL, Justice.

This case involves an election contest concerning the election of directors to the board of the Big Lost River Irrigation District. After finding discrepancies in the way the election was conducted and the way the ballots were counted, a defeated candidate brought suit to challenge the election results. The district court refused to declare either candidate duly elected and ordered a new election. The district court also awarded fees to both parties. The decision of the district court is affirmed in part and reversed in part, and the case is remanded.

## I.

### FACTS AND PROCEDURAL HISTORY

The Big Lost River Irrigation District (BLRID) is an irrigation district organized as a quasi-municipal corporation under the laws of the State of Idaho. On November 5, 1996,

an election was held to elect directors to its board. Election judges were provided with an assessment list and instruction sheet for use at the polls. During the election, a number of qualified voters were turned away because their names did not appear on the assessment list.

Six days after the election, the existing board met to canvass the votes of the election. The board found a significant number of discrepancies in the votes. Because of these discrepancies, the board did not certify the election at that time. On December 10, 1996, the board met again and had the precinct judges recount their ballots. The board then certified the results on a vote of three to two. Vivien Ellwien was declared the winner of the race between herself and the incumbent Marx Hintze by a vote of 241 for Ellwein and 239 for Hintze.

On December 30, 1996, Hintze and two land-owners in the district (appellants), filed a verified complaint and petition for writ of mandamus seeking to have Hintze declared the winner of the election. They also sought an order or a writ to have the sheriff place Hintze in possession of the office. On January 7, 1997, appellants filed for an ex parte temporary restraining order (TRO) seeking to restrain BLRID from allowing Ellwein to serve as a director. BLRID responded by filing a motion to quash the TRO. Ellwein moved to disqualify the judge, whereupon Judge Herndon was replaced by Judge Moss. On February 4, 1997, the district court entered an order enjoining both Ellwein and Hintze from serving as directors of BLRID.

On the morning of February 12, 1997, appellants filed an amended complaint again seeking to have Hintze seated as a director and also to have the court issue a writ or an order directing the board to perform certain statutory duties relating to election and record keeping. Later that day, a trial was held before the district court.

On March 6, 1997, the district court entered its findings of fact and conclusions of law. It found that qualified voters had been turned away from voting by the election judges' improper challenges. Some of the voters who were turned away were unidenti-

fied. Of the identified voters who had been turned away, ten testified for whom they would have voted. Six testified they would have voted for Hintze, three testified they would have voted for Ellwein, and one was undecided. Additionally, the court found that prior to the elections, BLRID had not completed accurate maps that reflected which lands were within the boundaries of BLRID. Finally, the court found that the only contested election results were between Ellwein and Hintze, and not the other two contestants for a different seat.

The next day, the district court entered its judgment. After declaring the Ellwein v. Hintze election void, it ordered that BLRID hold a new election between the two candidates. During the interim, BLRID was allowed to seat a temporary director to the board. BLRID was also ordered to prepare election handbooks for their election judges. The individual directors of BLRID were then dismissed as parties and the court ruled that the other election results were confirmed. Finally, the court awarded fees and costs to the plaintiffs from BLRID, but not from any individual directors.

Following the entry of judgment, BLRID filed a motion to amend the findings of fact and conclusions of law. BLRID also filed a motion for costs and attorney fees. The next day, appellants filed a memorandum of fees and costs claiming $3,630.03 in costs and $16,051.00 in attorney fees. Appellants then filed a motion to disallow costs and fees claimed by BLRID. Both sides filed numerous affidavits and memoranda in support of their claims for fees and costs.

On May 27, 1997, BLRID held a second election in which Ellwein was elected.

On July 11, 1997, the district court filed amended findings of fact and conclusions of law which made minor changes to prior findings. On the same day, it issued a memorandum awarding the plaintiffs costs of $832.56 and attorney fees of $7,031.86. The district court simultaneously issued another memorandum decision awarding fees to BLRID for its defense of the TRO and requested injunction. These were offset against plaintiffs' award, which netted plaintiffs $2,762.93.

On July 23, 1997, plaintiffs moved for clarification. The district court responded on August 11 with a concise explanation of its decision. Appellants filed a notice of appeal on August 19, 1997. BLRID filed a cross-appeal on September 9, 1997.

## II.

## ANALYSIS

The pleadings and briefs of this appeal raise several issues, including whether a writ of mandamus should have issued; whether general voter registration is required for electors of irrigation districts; whether attorney fees were properly awarded to each side and whether the district court should have ordered the second election. After a review of the record and hearing oral argument we determine that it is not necessary for this Court to resolve all of these issues to satisfactorily adjudicate this matter.

At the outset, we note that while the appellants' requested writ of mandamus was not issued, the district court did issue an order. In this order, the district court granted much of the same relief as was sought by the appellants in their request for a writ.

However, the issue that resolves the primary dispute before us, is the inquiry concerning the validity and necessity of the second election that was ordered by the district court.

■ As a preliminary matter, it is necessary to resolve the standard of review this Court should adhere to in addressing this type of election dispute and resolution by the lower court. In reviewing the judgment of a district court concerning a contested election, this Court will not disturb the findings of fact of the lower court where the findings of the lower court are supported by competent evidence, even if there is substantial conflict in the evidence. *Huffaker v. Edgington*, 30 Idaho 179, 183–84, 163 P. 793, 795 (1917). Insofar as the remedy selected by the district court, we will apply an abuse of discretion standard to our review of the election contest. We will also apply an abuse of discretion standard to our review of the award of attorney fees. *Brady v. City of*

*Homedale*, 130 Idaho 569, 573, 944 P.2d 704, 708 (1997).

■ In determining whether a district court has abused its discretion, this Court will apply the three-factor test articulated in *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). These three factors include: 1) whether the trial court correctly perceived the issue as one of discretion; 2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and 3) whether the trial court reached its decision by an exercise of reason.

*Id.* I.C. § 34–2021, amended in 1982, states:

The judgment of the court in cases of contested elections shall confirm or annul the election according to the right of the matter; or, in case the contest is in relation to the election of some person to an office, shall declare as elected the person who shall appear to be duly elected or, in the alternative, order the office to be filled according to chapter 9, title 59, Idaho Code, *or order a new election to be held at a time and place as determined by the court.* (emphasis added).

*Id.*

■ In the present case, the district court properly recognized that the Idaho Code provided the court with the discretion to either declare a winner of the election *or* order a new election between the parties. The court concluded that "while the court could declare Marx Hintze a winner . . . the proper course of action is to allow all qualified electors in the District an opportunity to vote."

It is clear that the option of ordering a new election was within the boundaries of the court's discretion. The statute on contested elections, I.C. § 34–2021 as discussed above, allows the district court to either declare a winner or order a new election.

■ The district court exercised reason when it determined to order a new election. The court found that the election results were close and that certain qualified voters had been turned away. It is clear, therefore,

that it was reasonable for the court to order a new election.

Therefore, we find that in the present case, the decision to order a new election was within the district court's discretion. The new election in which Ellwein was elected resolves the primary dispute of the parties. The other articulated issues become moot with this resolution. With the guidance provided with the resolution of this case, it is not necessary for this Court to speculate on future irrigation district elections.

■ We next turn to the question of whether attorney fees were properly awarded to each of the parties. We hold that the attorney fees were not properly awarded. Subsequent to the district court's decision, this Court published the opinion of *Brady v. City of Homedale*, 130 Idaho 569, 944 P.2d 704 (1997).

In *Brady*, the City of Homedale had been awarded attorney fees according to I.R.C.P. 65(c) by the trial court for successfully opposing injunctive relief. *Brady* at 573, 944 P.2d at 708. The district court in *Brady* relied on a Court of Appeals decision, *Devine v. Cluff*, 110 Idaho 1, 713 P.2d 437 (Ct.App.1985), which held that a party which had been wrongfully enjoined was entitled to attorney fees. However, the Supreme Court in *Brady* found that the City of Homedale had never actually been enjoined.

In reversing the district court, the Court ruled that the purpose of I.R.C.P. 65(c) was to redress a party who had been wrongfully enjoined, and that, in the absence of the issuing of an injunction, there was no basis for the award of fees and costs because the party had not been wrongfully enjoined. *Brady* at 573, 944 P.2d at 708.

Following the rationale of *Brady* requires this Court to make an adjustment to the award of attorney fees awarded to BLRID for opposing the injunction. The district court awarded appellants $6,199.30 for attorney fees. This amount reflected a proper reduction of appellants' total costs and fees by 50%. The percentage of the reduction was the percent of claims upon which they had prevailed. I.C. § 12–117(2). *See also Prouse v. Ransom*, 117 Idaho 734, 739, 791

P.2d 1313, 1318 (1990). Because BLRID was not entitled to fees or costs under I.R.C.P. 65(c), we hold the appellants' award should not be offset by the amount awarded to BLRID. Therefore, we remand the case to allow the district court to award attorney fees consistent with this decision.

### III.

### CONCLUSION

The district court's determination that a second election should be held was within its discretionary authority and is affirmed. The award of attorney fees is modified as set forth above. No attorney fees or costs are awarded on this appeal.

Justices SILAK, SCHROEDER, and WALTERS, concur.

Chief Justice TROUT, specially concurring.

The Appellants complain that the trial court erred by failing to issue a writ of mandate ordering the BLRID to comply with election laws. The Court holds that because the trial court properly ordered a new election, the issue of whether the writ should have issued becomes moot. I disagree. Whether the trial court should have issued a writ of mandate requiring compliance with election laws does not become moot simply because a new election is ordered. The BLRID has a continuing obligation to comply with duties required by statute. Instead, a case becomes moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *St. Alphonsus Reg'l Med. Ctr. v. Edmondson*, 130 Idaho 108, 111, 937 P.2d 420, 423 (1997) (citations omitted). Here the issue is whether a writ of mandate is the only available remedy.

A court may issue a writ of mandate to compel a public officer to carry out a clearly mandated ministerial, but non-discretionary, act. *See* I.C. § 7–302; *Edwards v. Industrial Comm'n*, 130 Idaho 457, 459, 943 P.2d 47, 49 (1997). However, a writ of mandate is an extraordinary remedy and may only be is-

sued where no other adequate legal or equitable remedy exists. *Edwards,* 130 Idaho at 459–60, 943 P.2d at 49–50. Here the trial court refused to issue the writ because of the "lack of an immediate urgency or current crisis." Instead, the trial court entered judgment effectively granting the relief Nelson requested. The amended judgment required the BLRID to (1) update its maps in compliance with I.C. § 34–301; (2) prepare an election handbook for use by election judges in compliance with I.C. §§ 34–1112, 34–1111, 43–111, 43–113; and (3) prepare an accurate assessment book and other requirements listed in I.C. § 43–701. Consistent with the language of the statutes, the judgment ordered the BLRID to comply, not immediately, but on or before August 1 of each year.

Because the new election was properly ordered and conducted, there was no immediate need to force the BLRID to comply with the election laws. Consequently, the judgment provided a sufficient remedy.