929 P.2d 741 (1996)
129 Idaho 565
STATE of Idaho By and Through ALAN G. LANCE, Attorney General, Plaintiff-Respondent,
v.
HOBBY HORSE RANCH TRACTOR AND EQUIPMENT CO., and Kent Edwards, Defendants-Appellants.
No. 22632.
Supreme Court of Idaho, Boise, November 1996 Term.
December 27, 1996.
Lloyd J. Walker, Sr., Twin Falls, for defendants-appellants.
Alan G. Lance, Attorney General; Brett T. DeLange, Deputy Attorney General, argued, Boise, for plaintiff-respondent.
SILAK, Justice.
This is an appeal of two district court orders, both of which required Hobby Horse Ranch and Kent Edwards (collectively referred to as Hobby Horse) to fully answer an Investigative Demand (Demand) issued by the Attorney General of the State of Idaho (the State). The first order was issued on October 31, 1995, in response to the State's Application for Order Compelling Response and after Hobby Horse had refused to answer one question in the Demand. Hobby Horse appealed that decision to this Court. Meanwhile, the State filed a motion for sanctions after Hobby Horse failed to comply with the district court's original order. The district court denied the motion for sanctions, but reiterated its requirement that Hobby Horse answer Question Seven of the Demand, and set a time limit for the response. Hobby Horse then filed an amended notice of appeal.

I.

FACTS AND PROCEDURAL BACKGROUND
Hobby Horse is an independent business, solely owned and operated by Kent Edwards. The business sells used 4x4 diesel tractors, at least some of which are "grey market tractors." The State has defined that term for the purposes of the Demand at issue in this case as "a tractor that was manufactured not for the United States market but for the Asian or European market."
The State, through the Attorney General, received several complaints alleging that *742 Hobby Horse had violated Idaho's Consumer Protection Act, Idaho Code section 48-601 et seq. (1977 and Supp.1996) (CPA) and Consumer Protection Rules, IDAPA .04.02.01 (1996). Specifically, the complaints alleged that Hobby Horse:
(1) affirmatively misrepresented that tractors sold by Hobby Horse and Edwards are manufactured for sale in the United States, when, in fact, the tractors were manufactured for use in Asia and Europe, or failed to disclose that the tractors were not designed for the United States market; (2) affirmatively misrepresented the availability of replacement parts or failed to disclose the difficulty of obtaining replacement parts for these tractors; (3) misrepresented the quality of the tractors sold to consumers; and (4) misrepresented or failed to disclose that merchandise being sold as new is in fact reconditioned, used merchandise.
Pursuant to I.C. § 48-611, on July 13, 1995, the State issued an Investigative Demand on Hobby Horse in care of its counsel. The Demand, which was received on July 17, 1995, requested various types of information regarding Hobby Horse's sale of grey market tractors, and required a response within 20 days of receipt of the Demand. On August 16, 1995, the State informed counsel for Hobby Horse that the deadline for response, which was August 6, 1995, had passed. Hobby Horse's counsel did not respond, and on September 12, 1995, the State filed an Application for Order Compelling Response and Granting Injunctive and Other Relief (Application) with the district court. The Application was made pursuant to I.C. § 48-614.
At the September 26, 1995 hearing, the district court granted a two week continuance to allow Hobby Horse to supply the information required by the Demand. On October 10, 1995, Hobby Horse answered Questions One through Six. Question Seven asked Hobby Horse to "[p]lease identify every consumer who has purchased a grey market tractor from you since July 31, 1993." Hobby Horse responded to Question Seven by stating that
[t]his question goes well beyond the jurisdiction of the Attorney General's Office in Idaho. Further, there is no basis established in the complaints heretofore made by the Attorney General's Office which would justify a review of all of the purchasers of used tractors since July of 1993. There are no complaints concerning the quality or condition of the tractors; all of the complaints are based on grey market.
At the same time, Hobby Horse filed a "Complaint," asking the State, through the Attorney General, to file an action against Kubota and Mitsubishi Corporations, the manufacturers of the grey market tractors.[1] After a motion by the State and agreement by Hobby Horse, the district court struck the "Complaint" on October 24, 1995. That ruling has not been appealed. That same day, the district court ordered Hobby Horse to answer Question Seven. However, the court also ruled that the customer list was a trade secret under I.C. § 9-340(2), and was therefore not subject to Idaho's public records laws.
Hobby Horse did not answer Question Seven, and filed a notice of appeal of the order. In the meantime, the State filed a motion for sanctions because Hobby Horse failed to comply with the district court's order. That motion was denied, but the district court ordered Hobby Horse to answer Question Seven on or before December 13, 1995. Hobby Horse then filed an amended notice of appeal.

II.

ISSUES ON APPEAL
Appellant Hobby Horse states the issues as:
1. Whether the Idaho Attorney General's Office has engaged in arbitrary enforcement against the defendant as a retail used tractor sales business.

*743 2. Whether the Idaho Attorney General's Office violated the Idaho CPA, I.C. § 48-601 et seq., when it failed to enforce the CPA against Kubota and Mitsubishi Corporations in their interference with free trade.
3. Whether the Idaho Attorney General has the authority or jurisdiction under the CPA to solicit complaints when none exist.
4. Whether the jurisdiction of the Idaho Attorney General's office extends to permit it to demand customer lists of tractor buyers, when the sales were made in interstate commerce and in a six-state region.
5. Whether the jurisdiction of the Idaho Attorney General is limited to the State of Idaho.
6. Whether enforcement of 15 U.S.C. § 45 is within the sole jurisdiction of the Federal Trade Commission.
The Respondent State of Idaho raises an additional issue on appeal:
1. Is the Attorney General entitled to his attorney fees and costs in defending this appeal, pursuant to I.C. § 48-614(2) (Supp.1996)?

III.

ANALYSIS

A. Hobby Horse Waived Its Right To Object To The Investigative Demand By Failing To Respond Within The Time Period Set Forth In The Statute.
The State argues that because Hobby Horse did not respond to its Demand within twenty days, it waived its right to object. The district court did not make a specific finding regarding waiver in its order. However, at the hearing on the matter, the court did state that "[t]he statute gives a certain time period to object. That was not done in this case."
I.C. § 48-611(2) provides that

[a]t any time before the return date specified in an investigative demand, or within twenty (20) days after the demand has been served, whichever period is shorter, a petition to extend the return date, or to modify or set aside the demand, stating good cause, may be filed in the district court of the county where the person served with the demand resides or has his principal place of business or in the district court in Ada County.
I.C. § 48-611 (Supp.1996) (emphasis added). The Demand was delivered to Hobby Horse's counsel on July 17, 1995, and specified that the information be returned within twenty days, the statutory time period. Therefore, any petition to extend the return date or modify or set aside the demand should have been filed with the district court by August 6, 1995. We must determine whether the twenty day time period found in the statute effectively sets forth a time limit within which the recipient of an Investigative Demand must reply or object, or else waive the right to object. Framed differently, the issue is whether the failure to respond or object in any fashion within the time period specified constitutes a waiver by Hobby Horse of its right to object to the Demand.
In making that determination, we are mindful of the Idaho Legislature's statement that "[i]t is the intention of the legislature that this chapter be remedial and be so construed." I.C. § 48-601 (Supp.1996). It is a well-known canon of statutory construction that remedial legislation is to be liberally construed to give effect to the intent of the legislature. NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 60.01 at 147 (5th ed.1992). Hence, we have previously found that the CPA "indicates a legislative intent to deter deceptive or unfair trade practices and to provide relief for consumers exposed to proscribed practices." State ex rel. Kidwell v. Master Distributors, 101 Idaho 447, 455, 615 P.2d 116, 124 (1980). See also In re Western Acceptance Corp., 117 Idaho 399, 401, 788 P.2d 214, 216 (1990). Therefore, the provisions of the CPA, including I.C. § 48-611, will be liberally construed to prevent deceptive or unfair trade practices, and to protect consumers.
With those principles in mind, we hold that failure to respond or file a petition pursuant to the procedures and within the time period *744 set forth in I.C. § 48-611 constitutes a waiver of the right to object to the Demand. The statute clearly sets forth a time limit for objections and petitions, as well as the procedure for doing so. Hobby Horse chose not to comply with clear requirements of the statute, and instead waited for the State to file an Application for Order Compelling Response. Only then did Hobby Horse object to the Demand. Such tactics effectively contravene the Legislature's intent to deter unfair or deceptive trade practices, and to provide relief to consumers who may have been victims of proscribed behavior. Given such a clear expression of legislative intent, we hold that a party upon whom an Investigative Demand is served must respond or object within the statutory time period, or else the party has waived its right to object.
Because we hold that Hobby Horse waived its right to object to the Demand, we do not reach the issues raised by Hobby Horse in its appeal. We affirm the orders of the district court of October 24, 1995, and December 11, 1995.

B. The State Is Entitled To Its Attorney Fees On Appeal.
The State has requested its attorney fees on appeal under I.C. § 48-614(2). That section dictates that
[t]he court shall award the prevailing party reasonable expenses and attorney fees incurred in obtaining an order under the provisions of this section if the court finds that ... a person's resistance to filing any statement or report, or obeying any subpoena or investigative demand, was without a reasonable basis in fact or law.
I.C. § 48-614(2) (Supp.1996). Because the CPA sets forth a clear procedure and time limit for objecting to a Demand, Hobby Horse's failure to object or respond to the Demand within the statutory time period was without a reasonable basis in fact or law. Further, the respondent the State of Idaho clearly prevailed on appeal. Therefore, we award costs and attorney fees to the State on appeal.

IV.

CONCLUSION
We affirm the orders of the district court. Hobby Horse waived its right to object to the Investigative Demand when it did not object or respond within the time limits set by I.C. § 48-611. Once that time period expired, Hobby Horse's resistance to complying with the Investigative Demand was without a reasonable basis in fact or law. We therefore award costs and attorney fees on appeal to the State as the prevailing party, pursuant to I.C. § 48-614.
McDEVITT, C.J., and JOHNSON, TROUT and SCHROEDER, JJ., concur.
NOTES
[1] A good part of Hobby Horse's argument before the district court and this Court is a discussion of Kubota and Mitsubishi's trade practices. Hobby Horse has alleged that those companies have been waging a "campaign", via letters and advertising, to stop the sale of grey market tractors in this country. The nature of the companies' conduct is not at issue in this case.