41 P.3d 242

ELECTRICAL WHOLESALE SUPPLY CO. INC., Plaintiff–Respondent– Cross Appellant,

v.

Kenneth M. NIELSON d/b/a Ken Nielson Electric, Defendant–Respondent– Cross Appellant,

and

Idaho Falls BPA, LLC, an Idaho limited liability company a/k/a R. Webster and Associates; Helen Swindells Trust, Defendants–Appellants–Cross Respondents.

Ken Nielson, d/b/a Ken Nielson Electric, Cross Claimant–Respondent–Cross Appellant,

v.

Idaho Falls BPA, LLC, an Idaho limited liability company a/k/a R. Webster and Associates; Helen Swindells Trust, Cross Defendants–Appellants–Cross Respondents.

No. 25807.

Supreme Court of Idaho, Idaho Falls, September 2001 Term.

Dec. 31, 2001.

Rehearing Denied Feb. 19, 2002.

816

Service, Gasser & Kerl, Pocatello, for appellant (BPA/Webster). Steven V. Richert argued.

Bart M. Davis, Idaho Falls, for respondent (EWSC).

David A. Johnson, Idaho Falls, for respondent (Nielson).

SCHROEDER, Justice.

Idaho Falls Bonneville Power Administration, LLC (hereinafter BPA) a/k/a R. Webster and Associates (hereinafter Webster), brings this appeal contesting the district court's decision imposing liens on Webster for work and materials used in constructing the new BPA building in Idaho Falls. The trustee for Kenneth M. Nielson, d/b/a Ken Nielson Electric, (Nielson) who performed electrical work on the project, has cross appealed on issues concerning the amount of the award to Nielson and the amount of

attorney fees allowed. The decision of the district court is affirmed.

## I.

## BACKGROUND AND PRIOR PROCEDURES

The property subject to the liens in this case is real property located in Idaho Falls where the new Idaho Falls BPA building was constructed. The property is owned by BPA subject to the terms and conditions of the Helen Swindells Trust's thirty percent interest as a tenant in common.

In October of 1995 Webster assumed the role of general contractor for the construction of the Idaho Falls BPA building. Webster hired Ken Nielson as the electrical subcontractor for the project. The two orally agreed that Nielson's work was on a "time and material" basis, which meant that Nielson would bill Webster for the time that he and his employees worked on the project and for the materials he furnished. Nielson did a small amount of work on the project between October of 1995 and January of 1996. The bulk of the work was done after that time. These facts are relevant in determining the amounts to be awarded based on who did the work at those times.

Electric Wholesale Supply Co., Inc. (hereinafter EWSC) is an electrical materials supplier. Nielson had an account with EWSC with an outstanding balance before he began the BPA project. In October of 1995 Nielson began charging electrical materials on his account at EWSC to use on the BPA project. Webster eventually opened his own account at EWSC but never directed Nielson to use that account, and Nielson never charged on the account. Nielson began submitting bills to Webster for the work performed and for the materials provided. In these bills Nielson included a markup on the cost of the materials of between 15% and 20%. The parties had not expressed any agreement on a mark-up.

In January of 1996, Nielson hired Dave Paulk (Paulk), d/b/a Warrior Electric (Warrior) to work on the BPA project. Warrior worked on the building during the day, Nielson worked at night and on the weekends.

Nielson directed Paulk to charge materials used for the BPA project to his account at EWSC, which Paulk did until EWSC placed a credit hold on Nielson's account. Paulk then purchased the materials needed from his own account at EWSC. Once the credit hold was released on Nielson's account, Paulk resumed charging the materials on Nielson's account. By March and April, Warrior employees were doing most of the work on the project.

Nielson submitted bills for materials and labor to Webster who paid in full, without question. In April, however, Webster paid Nielson $10,000 and refused to make additional payments. Webster changed the locks on the project site, preventing Nielson from working on the project. Webster directed Warrior to complete the project. While completing the project, Warrior continued to purchase the materials on Nielson's account at EWSC.

On June 26, 1996, EWSC filed a materialman's lien against the property, seeking payment for $14,941.02 of unpaid credit purchases made on Nielson's account. Nielson also submitted a claim against the property for the amount of materials he claimed to have furnished to the project, $51,571.00. Nielson did not seek payment for the cost of labor provided. When Webster refused to pay the lien amounts, EWSC filed a complaint to foreclose its claim of lien on the property. EWSC named Nielson, BPA, Helen Swindells Trust, and D & S Electrical Supply Co. as defendants. Nielson filed an answer and cross-claim to foreclose his own claim of lien on the property. Nielson later filed a petition for voluntary Chapter 7 bankruptcy on May 21, 1997, which was granted. Thereafter, the U.S. Bankruptcy Trustee (the trustee) became the legal party in interest for Nielson's claim. In August of 1997 Webster filed an offer of judgment for $6,000 to the EWSC's lien, but EWSC did not accept the offer. In January of 1998 Webster and D & S Electric settled D & S Electric's cross-claim and filed a stipulation to dismiss the cross-claim, which the district court granted.

Following a bench trial, the district court issued findings of fact and conclusions of law. BPA and Helen Swindells Trust filed a motion with the district court to reconsider its factual findings. The trustee also moved the district court to alter, amend, or reconsider its findings and for an award of attorney fees. BPA and Helen Swindells Trust then filed a second motion for reconsideration. EWSC filed a motion for costs and attorney fees. The district court granted EWSC's motion for costs and attorney fees and the bankruptcy trustee's motion for costs. The district court also reconsidered and altered some of its findings. The district court ultimately awarded EWSC $11,691.08 for the materials and $26,930.65 in costs and attorney fees; and awarded Nielson's bankruptcy trustee $1,069.12 for materials and $9,221.63 in costs and attorney fees.

## II.

### STANDARD OF REVIEW

 Review of a district court's findings of fact is limited to ascertaining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law. *Roell v. Boise City*, 134 Idaho 214, 999 P.2d 251 (2000) (citing *Conley v. Whittlesey*, 133 Idaho 265, 985 P.2d 1127 (1999)). A district court's findings of fact in a court-tried case are construed liberally on appeal in favor of the judgment entered. *Id.* It is the province of the trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. *Id.* If the findings of fact are based on substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. *Id.* However, this Court exercises free review over the lower court's conclusions of law to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found. *Id.*

## III.

### THERE IS SUBSTANTIAL, COMPETENT EVIDENCE TO SUPPORT EWSC'S CLAIM FOR MATERIALS PROVIDED TO THE PROJECT

 Webster disputes the district court's factual findings regarding what materials were provided by EWSC to the BPA project, contending that because Nielson signed the invoices after the date that the district court determined he was no longer working on the project, those invoices cannot be included in EWSC's award. There is substantial and competent evidence to support the district court's findings regarding which materials were provided by EWSC to the project. Therefore, the district court properly included them in the lien amount. Although the district court concluded that Nielson's testimony was unreliable, the district court had Paulks' testimony and the correlation between the invoices submitted by EWSC, the bills submitted from Nielson to Webster, and the payments made by Webster to support the decision. The district court determined that the materials included in EWSC's claim that were purchased after April 4th were purchased by Warrior on Nielson's account and used on the BPA project, entitling EWSC to payment for the materials. This finding is supported by evidence in the record.

## IV.

### THE DISTRICT COURT DID NOT APPLY THE WRONG BURDEN OF PROOF WHEN DETERMINING WHETHER MATERIAL PURCHASED BY NIELSON WAS PROPERLY INCLUDED IN EWSC'S CLAIM.

#### A. Application Of The Burden Of Proof

 Webster asserts that the district court erred in failing to require EWSC to present substantial evidence that the claimed material was either delivered to the project site or otherwise incorporated into the project, asserting that EWSC's evidence only indicated that the material claimed to be included in the lien was "of the type" that could be used on the project.

 Whether the district court applied the correct burden of proof at trial is a question of law over which this Court exercises free

review. *Humberger v. Humberger,* 134 Idaho 39, 41, 995 P.2d 809, 811 (2000) (citing *Jensen v. Jensen,* 128 Idaho 600, 604, 917 P.2d 757, 761 (1996)). The district court's findings of fact are reviewed with an abuse of discretion standard. The district court's opinion detailed what materials included in the invoices submitted were either "used or consumed by the BPA project." Webster challenges the district court's findings, arguing that the testimony supporting the claim, especially Nielson's, was unreliable.

 Materialmen and mechanics liens are governed by I.C. § 45–501 *et seq.,* which provides:

> **Right to lien**—Every person, otherwise unsecured in whole or in part, *performing labor upon, or furnishing materials to be used in* the construction, alteration or repair of any ... building ... or any other structure, or ... otherwise improves land ... and every professional engineer or licensed surveyor under contract who prepares or furnishes designs, plans, plats, maps, specifications, drawings, surveys, estimates of cost, on site observation or supervision, or who renders any other professional service whatsoever for which he is legally authorized to perform in connection with any land or building development or improvement, or to establish boundaries, has a lien upon the same for the work or labor done or professional services or materials furnished, whether done or furnished at the instance of the owner of the building or other improvement or his agent; and every contractor, subcontractor, architect, builder or any person having charge of any mining claim, or of the construction, alteration or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner for the purpose of this chapter....

I.C. § 45–501 (emphasis added). I.C. § 45–501 is available to those who "perform labor" or "furnish materials to be used in the construction" of a project. *Great Plains Equipment, Inc., v. Northwest Pipeline,* 132 Idaho 754, 760, 979 P.2d 627, 633 (1999). In determining who may assert a lien against a landowner's property pursuant to I.C. § 45–501,

this Court recognized that, "Under this statute the legislature evidently intended to grant the right to claim a lien to any person who contributes labor or materials for the construction, alteration, or repair of a building or structure upon real property." The Court noted that the legislature intended for the lien to be an absolute lien directly on the property itself:

> [I]t was clearly the intent of the legislature to grant an absolute lien direct upon the property, to the person who performs labor upon, or furnishes materials to be used in a building, structure or other improvement without reference to whether such person performing such labor, or furnishing material, is an original contractor or subcontractor, or a laborer or a materialman, and without reference to whether there is anything due the original contractor from the person or corporation constructing such building or other improvement.

*Id.* at 761, 979 P.2d 627. (citing *Hill v. Twin Falls Water Co.,* 22 Idaho 274, 279, 125 P. 204, 206 (1912)). Referring to I.C. § 45–501, this Court has also held that the statute

> [g]rant[s] the right to claim a lien for "the value of the labor or material furnished and used in or about the construction, alteration or repair of the building, structure or other works." That right of lien is based on the theory that the claimant has, either by his labor or by the materials furnished and used, contributed to the construction or improvement of the property against which the lien is asserted. Hence, where the labor is not used or the materials are not incorporated into the building, structure or improvement, no lien on land or building results.

*Id.* (citing *Chief Industries, Inc. v. Schwendiman,* 99 Idaho 682, 687, 587 P.2d 823, 828 (1978)) (quoting *Chamberlain v. City of Lewiston,* 23 Idaho 154, 163, 129 P. 1069, 1071 (1912)) (citations omitted, emphasis deleted). Thus, a lien claimant must show that the labor or materials were incorporated into the land or building that is the subject of the claim. *Colorado Iron Works v. Riekenberg,* 4 Idaho 705, 710, 43 P. 681, 683 (1896) (quoting 2 Jones on Liens, § 1327) and *Chamber-*

822

*lain,* 23 Idaho at 163, 129 P. at 1071 (determining tools were not properly included in a claim of lien where they did not "go into or become part of" the work and were therefore not "used or consumed in the building.").

 Materialman lien claimants must prove that they either performed labor upon or furnished materials to be used in the project that is the subject of the lien. Thus, EWSC had the burden to present evidence that it had "furnished materials to be used in" the BPA project. When a materialman delivers the material to the site, the material is presumed to have been used in the project.[1] In this case, however, most of the materials were picked up from EWSC by either Nielson or Paulk. Webster claims that EWSC cannot rely on this presumption and was required to prove that the materials were used by BPA. Webster asserts that the testimony at trial that the claimed materials were "of the type" that may have been used in the project is insufficient to satisfy EWSC's burden. Webster also argues that the testimony elicited by EWSC at trial was unreliable and that the district court erred by considering it.

Determining and weighing the credibility of the witnesses and their testimony offered at trial is best left to the district court judge. *Worzala v. Worzala,* 128 Idaho 408, 413, 913 P.2d 1178, 1183 (1996) ("When reviewing factual determinations on appeal, this Court will defer to the magistrate's weighing of evidence and determination of witness credibility") (citing *Rohr v. Rohr,* 118 Idaho 689, 691, 800 P.2d 85, 87 (1990) ("[d]eference must be given to the special opportunity of the trial court to assess and weigh the credibility of the witnesses who appear before it.")). This Court generally does not second-guess the district court's findings unless they are unsupported by the evidence in the record.

There is substantial and competent evidence that the material included in the lien amount was provided to and used in the BPA project. Witnesses were asked about several of the invoices and whether the material contained in them was used on the project. Sometimes the invoices were read line by line and some materials were withdrawn from the lien claim where the witnesses testified the material was not used on the project. The district court's findings specified that the amounts included in EWSC's lien were "materials . . . . which were used and tools which were consumed in the construction of the BPA project."

Further, Webster claims that since the district court found Nielson's testimony unreliable, the district court should not have relied upon it in determining the amount of EWSC's claim. The district court opinion recognized that little reliable evidence was offered by the trustee to prove what materials Nielson provided to the BPA project. The district court noted that the trustee offered only Nielson's invoices and testimony to prove his claim but that "[n]either warrants a great deal of reliance." In determining what materials were included in Nielson's claim, the district court relied upon "the correlation between the materials listed on the invoices submitted by Nielson to Webster, the materials listed on the invoices submitted by EWSC in support of its claim of lien, and the testimony of Dave Paulk and Alex Paulk." The record indicates that the district court carefully analyzed the evidence and applied the correct burden of proof in reaching a decision.

### V.

## THE DISTRICT COURT DID NOT ERR BY INCLUDING A MARKUP IN THE TRUSTEE'S CLAIM.

 Webster raises the question of whether the district court erred in applying the going rate markup to the trustee's claim, arguing that the markup was not a part of the parties' agreement. The interpretation of a contract's meaning and legal effect are questions of law to be decided by the Court if the terms of the contract are clear and unam-

---

1. There is a rebuttable presumption that where materials are delivered to a project site they were incorporated into the project sufficient to satisfy I.C. § 45–501. *Chief Industries, Inc. v. Schwendiman,* 99 Idaho 682, 687, 587 P.2d 823, 826 (1978). *Chief Industries* also acknowledges the need for the claimant to show the labor or materials were incorporated into the project by either utilizing the presumption or otherwise. *Id.*

biguous. *State v. Barnett,* 133 Idaho 231, 234, 985 P.2d 111, 114 (1999) (citing *City of Idaho Falls v. Home Indemnity Co.,* 126 Idaho 604, 888 P.2d 383 (1995)). The meaning of an unambiguous contract and the intent of the parties must be determined from the plain meaning of the contract's own words. *Id.* Where a contract is determined to be ambiguous, interpretation of it is a question of fact that focuses on the intent of the parties. *Id.* (citing *Ada County Assessor v. Taylor,* 124 Idaho 550, 861 P.2d 1215 (1993)).

■ "[G]enerally, the inquiry by the trier of fact into an alleged oral agreement is three-fold: first, determining whether the agreement exists; second, interpreting the terms of the agreement; and third, construing the agreement for its intended legal effect." *Bischoff v. Quong–Watkins Props.,* 113 Idaho 826, 828, 748 P.2d 410, 412 (Ct. App.1987). The parties do not contest that an agreement exists. However, since the agreement between Nielson and Webster was oral, the district court was required to interpret the agreement's terms.

The district court acknowledged that the parties "did not discuss whether, or by how much, Nielson would mark-up the cost of electrical materials he furnished;" however, the testimony of an expert who practices the trade in the area, Mr. Bird, indicated that a markup is a custom in the area. There was also testimony by both Webster and Nielson that Webster had previously paid the markup on the materials, indicating that it was in the course of the parties' dealings to include the markup.

The district court noted that I.C. § 45–511 entitles a subcontractor to recover the amount due according to the terms of the contract after deducting the claims of other parties for work done and materials furnished. The district court stated that:

> [b]ased on evidence of Nielson's course of performance and the meaning of "time and materials" in the Bonneville County area,

Nielson was entitled to receive the profit from a mark-up on the material he furnished for the BPA project. *See Neylor (sic.) v. Lewiston & S.E. Electric Ry. Co.,* 14 Idaho 789, 96 P. 573, 577 (1908). The amount to which the bankruptcy trustee is entitled should . . . . be reduced by the cost of the materials which are included in EWS's claim of lien.

The district court determined that a 15% markup was a reasonable markup for the parties' agreement and awarded the trustee the amount he would have received from the markup.[2]

Webster cites to *Freeman & Co. v. Bolt,* 132 Idaho 152, 968 P.2d 247 (Ct.App.1998), for the proposition that where one party has no knowledge of a custom, the court may not impose a term in the parties' agreement based on the custom of the area if the parties had not previously agreed to include it. However, *Freeman* interprets the express terms of a written "cost-plus" contract. The parties' agreement in this case is an oral "time and materials" agreement lacking specificity. Webster had previously served as general contractor for construction of a nearly identical BPA building. It was not unreasonable for the district court to conclude that Webster had some knowledge of customs of the trade. There is substantial and competent evidence to support the district court's conclusion.

## VI.

**THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY AWARDING EWSC A DISPROPORTIONATE AMOUNT OF ATTORNEY FEES COMPARED TO THE AMOUNT OF THE AWARD.**

### A. Standard Of Review

■ Since the costs of filing and recording, as well as the attorney fees, are incidental to the foreclosure of a lien pursuant to I.C. § 45–513, the award of attorney fees as

---

**2.** The district court's decision awarded EWSC payment for the cost of the materials provided to the BPA project; Nielson's award was only for the amount of the markup on the materials Nielson provided prior to April 4th. Nielson was not awarded the markup cost for materials provided after April 4th because the district court determined he had been effectively terminated as of that date.

part of the enforcement of the lien is a mandatory award. *Olsen v. Rowe,* 125 Idaho 686, 689, 873 P.2d 1340, 1343 (Ct.App.1994); *Smith v. Faris–Kesl Constr. Co., Ltd.,* 27 Idaho 407, 423, 150 P. 25, 30 (1915) (attorney fees are merged with and become a part of the principal debt for which foreclosure of the lien is sought); *Barber v. Honorof,* 116 Idaho 767, 771, 780 P.2d 89, 93 (1989); *J.E.T. Development v. Dorsey Constr. Co.,* 102 Idaho 863, 865, 642 P.2d 954, 957 (Ct.App.1982).

 The operative phrase in I.C. § 45–513 is "reasonable attorney fees," and the trial court is free to consider all factors it deems as having a bearing on this case in its determination of what is reasonable. *See Barber,* 116 Idaho at 771, 780 P.2d at 93. The district court's determination of a reasonable amount of attorney fees is a factual determination to which this Court applies an abuse of discretion standard of review. *See State v. Byington,* 132 Idaho 589, 592, 977 P.2d 203, 206 (1999) (citing *Miller v. Echo-Hawk,* 126 Idaho 47, 878 P.2d 746 (1994) ("Factual findings that are the basis for an exercise of discretion ... are subject to a substantial and competent evidence standard of review.")); *see also Nelson v. Big Lost River Irrigation Dist.,* 133 Idaho 139, 142, 983 P.2d 212, 215 (1999) (citing *Brady v. City of Homedale,* 130 Idaho 569, 573, 944 P.2d 704, 708 (1997)). An award of attorney fees is a matter best left to the sound discretion of the trial court, and the burden is upon the appellant to demonstrate that the trial court abused its discretion. *Hellar v. Cenarrusa,* 106 Idaho 571, 577, 682 P.2d 524, 530 (1984).

 In reviewing an exercise of discretion, this Court must consider "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Sun Valley Shopping Ctr. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

## B. The Award Of Attorney Fees Was Not An Abuse Of Discretion

 EWSC was a prevailing lien claimant. Consequently, the award of attorney fees was mandatory pursuant to I.C. § 45–513. Whether the amount of attorney fees awarded by the district court was reasonable is a factual determination which this Court reviews with an abuse of discretion standard. Although the award exceeds the amount of EWSC's judgment, this fact alone does not render the attorney fee award as an abuse of discretion by the district court. *E.g., Lunders v. Snyder,* 131 Idaho 689, 699, 963 P.2d 372, 382 (1998); *Meldco, Inc. v. Hollytex Carpet Mills,* 118 Idaho 265, 271, 796 P.2d 142, 149 (Ct.App.1990). Further, since Webster's offer to pay $6,000 was less than the amount of the district court's award, the tender was insufficient and does not invalidate EWSC's award of attorney fees. *Harrington v. McCarthy,* 91 Idaho 307, 312, 420 P.2d 790, 795 (1966). The district court did not abuse its discretion in making the award.

## VII.

## THE DISTRICT COURT DID NOT ERR IN ALLOWING THE TRUSTEE TO RECOVER ATTORNEY FEES BASED UPON THE LIEN STATUTE

 Webster contends that the district court's award to the trustee runs contrary to the remedial nature of the lien statute because the trustee's claim significantly exceeded the amount of the ultimate award.

 I.C. § 45–501 *et seq.* is remedial in nature and not meant to be used to punish offenders but, instead, "to compensate persons who perform labor and/or furnish materials for .... projects." *Barber,* 116 Idaho at 769, 780 P.2d at 91 (citing *Guyman v. Anderson,* 75 Idaho 294, 271 P.2d 1020 (1954)) (stating that "the lien is not provided as a penalty, but rather as security"). In certain situations a court may find that a party's conduct is so abusive and devoid of any good faith effort to comply with the lien statutes that the court will employ equitable principles to prevent recovery. *Id.* ("[I]n the absence of oppression or some other circum-

stances which would justify a court of equity denying foreclosure, there is no reason it should not be granted, even though [the claimant] failed to establish his right to the full [amount claimed] and was ultimately awarded a lesser amount"). However, the fact that a lien claimant claims a higher amount than is ultimately awarded does not require the district court to invalidate the claimant's entire lien. *Id.* In this case, regardless of whether the trustee's claim was excessive, the remedial nature of the statute was preserved by the district court's award. The district court dramatically reduced the final award ($1,069.12) from the amount Nielson originally claimed ($51,571). Regardless, Nielson provided materials to the project and was entitled to compensation. The district court did not abuse its discretion in awarding a lien judgment, including costs and attorney fees, to the trustee.

## VIII.

### THE MANDATORY AWARD OF ATTORNEY FEES TO PREVAILING CLAIMANTS IN A LIEN FORECLOSURE ACTION DOES NOT VIOLATE IDAHO PUBLIC POLICY

Webster claims that the nature of I.C. § 45–513 (mandating an award of attorney fees where the lien claimant prevails) violates the Idaho public policy encouraging settlement. Webster asserts that where portions of the lien are valid but other portions are legitimately contestable, the lien claimant has no incentive to settle the disputed portions because they are assured that their attorney fees will be paid when they prevail on the undisputed portions at trial. This issue involves a question of law. The Court's standard of review is one of independent, or free review. *State v. Burnight*, 132 Idaho 654, 657, 978 P.2d 214, 218 (1999) (citing *State v. Larios*, 125 Idaho 727, 728, 874 P.2d 538, 539 (1994) and *In re Hanson*, 121 Idaho 507, 509, 826 P.2d 468, 470 (1992)).

Where this Court is called upon simply to interpret a statute, the Court "exercises free review over legal questions presented by the construction and application of a statute." *State v. Montgomery*, 135 Idaho

348, 17 P.3d 292 (2001) (citing *State v. Hagerman Water Right Owners, Inc.*, 130 Idaho 727, 732, 947 P.2d 400, 405 (1997)) and *City of Sun Valley v. Sun Valley Co.*, 128 Idaho 219, 221, 912 P.2d 106, 108 (1996). The Court will interpret the statute broadly to effectuate the intent of the legislature. *See Selkirk Seed Co. v. State Ins. Fund*, 135 Idaho 434, 18 P.3d 956 (2000) (citing *State v. Hobby Horse Ranch Tractor & Equip. Co.*, 129 Idaho 565, 567, 929 P.2d 741, 743 (1996)).

Webster, however, is not asking this Court to interpret I.C. § 45–513, nor is Webster asserting that the statute is unconstitutional. Webster is instead asking this Court to hold that the statute violates public policy.

The power invested to this Court is limited to interpretation of the constitution and laws and their application to the factual situations presented by the cases that come before the Court. *See Potlatch Corp. v. United States*, 134 Idaho 916, 12 P.3d 1260 (2000) ("[I]t is not for this Court, nor any court, to make or change the law, but to interpret the law as enacted by the legislative branch."); *Mead v. Arnell*, 117 Idaho 660, 664, 791 P.2d 410, 414 (1990); *Minich v. Gem State Developers*, 99 Idaho 911, 914, 591 P.2d 1078, 1081 (1979). The Court may not invade the powers of the legislature by striking down a statute unless it is unconstitutional. *See Padgett v. Williams*, 82 Idaho 114, 119, 350 P.2d 353, 358 (1960) (stating "this court does not have the power to invalidate or nullify a constitutional act of the legislature.... [I]f it does not clearly violate the constitution, the court must and will uphold it."). The power to make law and declare public policy is vested with the legislature. This Court will not intrude upon the province of the legislature.

## IX.

### THE DISTRICT COURT DID NOT ERR IN DETERMINING THE AMOUNT OF THE TRUSTEE'S AWARD.

The trustee seeks additional compensation in the claim of lien by contesting the district court's findings of fact on three grounds. First, the trustee argues the district court should award an additional $4,933.72 for the remaining balance on the

March 4, 1996 invoice. The invoices considered by the district court began on March 6, 1996. However, Webster only made a partial payment of the March 4th invoice, leaving a $4,933.72 deficiency. The trustee argues this partial payment should be considered as a promise to pay the entire balance.

The trustee is not entitled to payment for the remaining balance of the March 4th invoice. The district court awarded payment for the materials to EWSC, not the trustee; the trustee's only claim would be for the amount of the markup on the invoice. The district court considered all the invoices submitted to it when determining the amount of the trustee's award and disposed of all of the claims against Webster when deciding the case. Further, Webster testified that the payment was not a partial payment but a final payment. There is evidence to support the district court's determination. Thus the trustee is not entitled to additional compensation for the March 4th invoice.

■ Second, the trustee contends that the district court should have included materials furnished by Nielson after April 4th in the trustee's claim because the Paulks were agents of Nielson and authorized to charge on Nielson's account. The trustee argues that the changing of the locks at the project site did not terminate the agency relationship between the parties and that Nielson continued to perform as an agent for Webster through the Paulks.

The parties' relationship became complicated when the Paulks agreed to deal with Webster directly after Nielson had failed to pay the Paulks. Nielson claims his delay was caused by Webster's failure to pay Nielson. Nielson was never informed that the agency relationship had been terminated or changed. Further, the trustee claims that even if the Paulks became Webster's agents at some point, Webster is responsible for all of the Paulks' purchases made on Nielson's account, even if they were not used at BPA.

The trustee also argues that Nielson and Webster maintained a contractual relationship after April 4th and, even if it wasn't expressed, there was still an implied-in-fact contract entitling Nielson to compensation. The trustee cites to the parties' conduct as evidence of the fact that a markup on materi-

al was a part of their agreement because Webster had paid the markup in previous payments. The trustee also claims that UCC Article 2 governs the contract. Pursuant to Article 2, Nielson was entitled to set a reasonable price since Webster had failed to specify a price. The 15% markup was a reasonable price.

The district court properly excluded Nielson from recovering the markup value of materials purchased after April 4th. The record indicates that Nielson was locked out of the project site and that Webster directed Warrior to complete the project. Nielson's only recovery in this action was for the markup value of the materials he provided pursuant to the parties' agreement. After April 4th the agreement was terminated. The fact that Warrior continued to charge materials on Nielson's account does not entitle Nielson to profit in the same way as he had before his employment was terminated. Only EWSC was entitled to payment for the materials they provided after April 4th.

■ The trustee argues he is entitled to compensation for material and items furnished by D & S Electrical Supply because Webster did not dispute that the material purchased through D & S on Nielson's account was used on the BPA project. The district court properly limited Nielson's recovery to the EWSC invoices. In its findings of fact, the district court indicated that the bankruptcy trustee had offered "little reliable evidence regarding what materials Nielson furnished for the BPA project." Moreover, D & S had already settled their claim against Webster before this trial had begun. The district court therefore appropriately limited its decision to the evidence available at trial.

There is substantial evidence in the record to support the district court's factual findings regarding the trustee's claims.

## X.

## THE DISTRICT COURT DID NOT ERR BY FAILING TO CONSIDER CERTAIN INVOICES IN DETERMINING WHAT COMPENSATION WAS DUE AND OWING TO THE TRUSTEE

■ The trustee argues that the district court erroneously failed to consider all the

invoices presented and, thus, the trustee's claim of lien amount was too low to cover the cost of the materials provided by Nielson. The trustee asserts that evidence presented at trial revealed a gap between what the project should have cost (around $95,000) and what Webster paid prior to the lawsuit ($48,000) (leaving a difference of $47,000). The trustee claims that the remaining balance should have been paid to each of the creditors, EWSC, D & S Supply, and Nielson.

A review of the record indicates the district court thoroughly considered the evidence presented, and there is substantial and competent evidence to support the district court's award. The district court's opinion noted that the trustee had offered little proof either by testimony or evidence to support the claim. Further, the proof offered was considered "unreliable." The trustee's claim regarding the difference in amounts fails to take into account the fact that the district court's award to the trustee was only for the markup value of the materials Nielson provided prior to April 4th. There is substantial and competent evidence in the record to support the district court's ruling.

## XI.

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DETERMINING THE AMOUNT OF ATTORNEY FEES DUE TO THE TRUSTEE

■ The trustee contests the amount of attorney fees awarded by the district court. The trustee contends that the district court abused its discretion in awarding a significantly lower amount of attorney fees ($7,956.67) compared to EWSC's attorney fee award ($26,930) even though the two performed identical work.

■ When determining the amount of attorney fees to award pursuant to I.R.C.P. 54(e)(3), courts are not required to give the amount involved in the case "more weight or emphasis than should be given to the other applicable factors." *Meldco, Inc.*, 118 Idaho at 271, 796 P.2d at 148. Further, I.R.C.P. 54(e)(3) does not require the amount of attorney fees to be proportionate to the size of the

damages award. *Id.* In *Lunders v. Snyder*, this Court rejected a party's argument that because the prevailing party only recovered 23% of the original claim, the attorney fees award should be reduced by the same amount. 131 Idaho at 699, 700, 963 P.2d at 382, 383 (recognizing that the amount of attorney fees was properly determined by utilizing the factors in I.R.C.P. 54(e)(3) and that no one factor is given more weight than any other).

The district court's opinion indicates that the trustee provided little evidence to support the claims at trial. Further, the district court's decision regarding the amount of attorney fees to award to the trustee properly considered the factors in I.R.C.P. 54(e)(3). The district court determined that the amount of attorney fees should be reduced proportionally to the amount of the award pursuant to I.R.C.P. 54(e)(3)(G). The district court then increased the award after taking into account "the many hours which the trustee's attorney obviously spent in prosecuting the bankruptcy trustee's claim of lien."

The trustee argues that the district court should have considered the amount of the judgments awarded to EWSC and D & S in determining the amount obtained under I.R.C.P. 54(e)(3)(G). However, I.R.C.P. 54(e)(3)(G) does not require the district court to consider the amount of the entire judgment against Webster. It was not unreasonable for the district court to consider only the amount of the trustee's award when determining the reasonable amount of attorney fees due to the trustee.

## XII.

## ATTORNEY FEES ON APPEAL

Webster claims entitlement to attorney fees on appeal pursuant to I.C. § 12–121. Webster also maintains that neither EWSC nor the trustee is entitled to attorney fees on appeal because Webster's claims are not frivolous. EWSC claims that it is entitled to attorney fees pursuant to I.C. § 12–121 because the appeal does not present a meaningful issue but seeks to second-guess factual

findings. The trustee claims attorney fees on appeal pursuant to I.C. § 12–120(3).

An award of attorney fees on appeal pursuant to I.C. § 12–121 is proper only where this Court is left with the abiding belief that the appeal was "brought or pursued frivolously, unreasonably, and without foundation." *Stanley v. McDaniel*, 134 Idaho 630, 7 P.3d 1107 (2000) (citing *Anson v. Les Bois Race Track, Inc.*, 130 Idaho 303, 305, 939 P.2d 1382, 1384 (1997)); I.C. § 12–121. Where an appeal turns on questions of law, an award of attorney fees under this section is proper if the law is well-settled and the appellant has made no substantial showing that the district court misapplied the law. *Andrews v. Idaho Forest Indus., Inc.*, 117 Idaho 195, 198, 786 P.2d 586, 589 (Ct.App. 1990); *Cf. Thompson v. Pike*, 125 Idaho 897, 876 P.2d 595 (1994) (court declined to award attorney fees under I.C. § 12–121 in a legal malpractice action because it did not believe the appeal was frivolous). When an appeal simply disputes the trial court's factual findings, which are supported by substantial although conflicting evidence, the appeal is considered frivolous and an award of attorney fees is proper under I.C. § 12–121. *See Doe v. Roe*, 133 Idaho 805, 810, 992 P.2d 1205, 1209 (1999). "[A]n award under I.C. § 12–121 is appropriate where an appeal presents no meaningful issue on a question of law but simply invites the appellate court to second-guess the trial judge on conflicting evidence." *Knowlton v. Mudd*, 116 Idaho 262, 265, 775 P.2d 154, 157 (Ct.App.1989) (citing *T–Craft Aero Club, Inc. v. Blough*, 102 Idaho 833, 642 P.2d 70 (Ct.App.1982)).

#### A. Webster's Claim

Webster is not entitled to attorney fees against EWSC pursuant to I.C. § 12–121 since its only cross-issue on appeal is a request for attorney fees, which is not frivolous, unreasonable, or without foundation. However, the trustee's cross-appeal only contests the district court's findings of fact. Webster is entitled to attorney fees in defending the trustee's cross appeal.

#### B. EWSC's Claim

EWSC requests attorney fees on appeal pursuant to I.C. § 12–121, because Webster's appeal failed to present a meaningful issue on a question of law but, instead, asked this Court to second-guess the trial judge. As noted, where an appeal simply disputes the trial court's factual findings, which are supported by substantial although conflicting evidence, the appeal is considered frivolous and an award of attorney fees is proper under I.C. § 12–121. *See Doe*, 133 Idaho at 810, 992 P.2d at 1209 (1999) (citing *Zanotti v. Cook*, 129 Idaho 151, 155, 922 P.2d 1077, 1081 (Ct.App.1996)). Webster's appeal essentially asks this Court to reconsider the district court's findings of fact without raising significant questions of law. EWSC is entitled to attorney fees from Webster.

#### C. The Trustee's Claim

As one of his cross-issues on appeal, the trustee requests attorney fees on appeal pursuant to I.C. § 12–120(3) based on the parties' contract. Section 12–120(3) provides for an award of attorney fees to the prevailing party in a civil action to recover on a contract. The trustee's request for attorney fees pursuant to I.C. § 12–120(3) is inappropriate because the trustee has not prevailed on the cross-appellant issues.

### XIII.

### CONCLUSION

The decision of the district court is affirmed. Attorney fees and costs are awarded as outlined in this opinion.

Chief Justice TROUT, Justices WALTERS, KIDWELL, and EISMANN, CONCUR.